**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN RICHARD, | : | Civil No. 1:26-CV-00122 |
| Petitioner, | : | |
| v. | : | |
| LAUREL R. HARRY, *et al* ., | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

# MEMORANDUM

Before the court is an amended petition under 28 U.S.C. § 2254 filed by Ryan Richard ("Petitioner"), a motion to proceed *in forma pauperis*, and a motion to appoint counsel. (Docs. 9, 10, 11.) The court will screen the amended petition under Rule 4, dismiss the petition as untimely, deny the motion to proceed *in forma pauperis* as moot, deny the motion to appoint counsel, and close the case.

## BACKGROUND AND PROCEDURAL HISTORY

The history of the state proceedings are adequately summarized by the February 5, 2025 decision of the Superior Court of Pennsylvania:

> Appellant pled guilty in 1989 to third-degree murder in the killing of his wife at their Berks County home. He was scheduled to be released from prison in December 2012. At some point before his release from prison, Appellant mailed two letters to his now deceased mother. The first letter, which was undated and listed Appellant's mother as the intended addressee (the "First Letter"), contained threats aimed at several individuals involved in the criminal proceedings which lead to Appellant's 1989 guilty plea. The First Letter also outlined a plan to break into a home, kill the occupants, and kill any responding police officers. The second letter, which also was undated but addressed to

Appellant himself (the "Hit List Letter"), contained death threats targeting multiple individuals involved in Appellant's 1989 murder conviction, together with Appellant's plans for killing several of the named individuals upon his release from incarceration.

Following the death of Appellant's mother in January 2010, the First Letter and the Hit List letter were discovered by Appellant's brother, Russell Richard ("Russell"). Russell, in turn, produced the letters to the Pennsylvania State Police, who alerted the individuals to whom threats had been directed. On December 13, 2012, upon release from prison, Appellant was arrested and charged with eight counts of terroristic threats and eight counts of harassment related to the letters. The charges were filed at Center County docket number CP-14-CR-0016-2013, a case which we shall refer to as the "Letters Charges" at docket "16-2013." While awaiting trial on the Letters Charges, Appellant moved to dismiss the case, claiming that the letters were written outside the five-year limitations period. On April 2, 2013, the trial court convened a hearing on Appellant's motion, at which Russell testified.

Two days later, on April 4, 2013, Appellant made an unmonitored telephone call to his estranged daughter, Robyn Apgar, from his counselor's office in the prison. During the conversation, Appellant directed threatening remarks toward his daughter. In addition, Appellant threatened Russell about his recent testimony at the hearing held on April 2, 2013. On April 10, 2013, Appellant was charged with two additional counts of terroristic threats, filed at docket number CP-13-CR-0708-2013 ("708-2013"), and one count of witness intimidation, filed at docket number CP-14-CR-0711-2013 ("711-2013"). Collectively, we shall refer to these charges as the "Telephone Charges."

The Letters Charges and the Telephone Charges were consolidated for trial in November 2014. At trial, the Commonwealth focused largely on the contents of the First Letter and the Hit List Letter. At the close of the Commonwealth's case, Appellant moved for acquittal in the Letters Charges case, renewing his contentions based upon the statute of limitations. The trial court granted Appellant's motion on one count of terroristic threats, and, at the conclusion of trial, Appellant was found not guilty of the remaining seven counts of terroristic threats at docket 16-2013. The jury found Appellant guilty of the two counts of

terroristic threats at 708-2013 and the witness intimidation charge docketed at 711-2013. On August 6, 2015, Appellant received an aggregate sentence of seven to 17 years' incarceration. On November 15, 2016, this Court affirmed Appellant's judgment of sentence on direct appeal, *see Commonwealth v. Richard*, 150 A.3d 504 (Pa. Super. 2016), and Appellant did not seek allowance of appeal with the Supreme Court.

Acting *pro se*, Appellant filed a timely, first petition for collateral relief under the PCRA on January 6, 2017. The PCRA court appointed counsel, who amended the petition on November 21, 2017. A two-day hearing was conducted in November 2018, and the PCRA court denied the petition on July 15, 2019. On August 13, 2019, Appellant filed two separate notices of appeal at 708-2013 and 711-2013 but did not appeal at 16-2013. This Court affirmed the dismissal of Appellant's petition on September 29, 2020, and the Supreme Court denied review on February 10, 2021. *See Commonwealth v. Richard*, 240 A.3d 988 (Pa. Super. 2020) (non-precedential decision), *appeal denied*, 244 A.3d 1228 (Pa. 2021).

Appellant filed, *pro se*, a second petition for collateral relief on March 29, 2021. Appointed counsel filed an amended petition on August 27, 2021. The thrust of the second petition was that Appellant's first PCRA counsel was ineffective in failing to preserve for appeal claims relating to the Hit List Letters at 16-2013. Appellant viewed these claims as interwoven with his convictions at the other two dockets and critical to his prospects for obtaining collateral relief. *See* Appellant's Brief at 6-7. The PCRA court denied the petition without a hearing on January 31, 2022. No appeal was taken from the denial of Appellant's second petition.

Appellant filed a third petition for relief under the PCRA on December 1, 2022. The petition requested reinstatement of Appellant's right to appeal the denial of his second petition for collateral relief. To support his claim, Appellant alleged that he asked counsel on his second petition to appeal the PCRA court's January 31, 2022 dismissal order. Appellant further alleges that counsel was ineffective in failing to carry out his request. A third collateral relief counsel was appointed to represent Appellant, but that attorney withdrew when a fourth appointment was made. Following an evidentiary hearing, the PCRA court denied Appellant's third petition on December 1, 2023. In an

> opinion that accompanied the dismissal order, the court credited the testimony offered by counsel on Appellant's second petition, who explained that she advised Appellant to forgo an appeal because it was unlikely to succeed and could imperil Appellant's efforts to secure parole. *See* Trial Court Opinion, 12/1/23, at 2 and 5. The court also credited counsel's testimony that Appellant agreed with her recommendations and that he failed to respond to counsel's written communication confirming that no appeal would be taken. *See id.* at 5. Under these circumstances, the court concluded that Appellant failed to meet his burden in establishing that counsel had been ineffective. *See id.* at 5. This timely appeal followed.

*Commonwealth v. Richard*, 335 A.3d 312 (Pa. Super. Ct.), *appeal denied,* 343 A.3d 728 (Pa. 2025). The Superior Court stated that Petitioner was appealing from the dismissal of the third PCRA petition as untimely. *Id.*, at *3–4. The Superior Court affirmed this dismissal. *Id*. Petitioner filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on July 22, 2025. *Commonwealth v. Richard*, 343 A.3d 728 (Pa. 2025).

Petitioner then filed a Section 2254 petition dated January 12, 2026, and received and docketed by the court on January 20, 2026. (Doc. 2.) Petitioner paid the filing fee. (Doc. 1.) On January 21, 2026, the court issued an order explaining the limitations of a petitioner's right to file subsequent habeas petitions in the future if the court considered the petition as written. (Doc. 5.) Petitioner then notified the court that he desired to withdraw his petition. (Doc. 7.) On March 19, 2026, the court entered an order withdrawing the petition, terminating the case, and

instructing Petitioner that he could file an amended petition and the court would reopen the case. (Doc. 8.)

On August 25, 2026, the court received and docketed an amended petition along with a motion for leave to proceed *in forma pauperis* and a motion to appoint counsel. (Docs. 9, 10, 11.)

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced. 28 U.S.C. § 2241(d). Petitioner is housed at SCI-Frackville in Frackville, Pennsylvania, which is located in this district. *See* 28 U.S.C. § 118(b). Therefore, venue in this district is proper.

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting habeas relief in state court criminal prosecutions is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107 (1982). "The States possess primary authority for defining and enforcing the criminal law.

In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitations period for state prisoners seeking federal habeas review:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d).

Under Pennsylvania law, a defendant who has been convicted and sentenced of a crime, such as Petitioner, has thirty (30) days in which to file a direct appeal, starting from the latter of (a) the date of sentencing, Pa. R. Crim. P. 720(A)(3)), or (b) the date of an order deciding a timely post-sentence motion or acknowledging the defendant's withdrawal of such a timely post-sentence motion, Pa. R. Crim. P.

720(A)(2). The defendant's judgment becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *See* 42 Pa. C.S.A. § 9545(b)(3).

In the instant action, Petitioner's conviction became "final" on or about December 15, 2016, *i.e,* thirty days after the Superior Court affirmed the judgment of sentence on direct appeal. *See* Pa.R. A.P. 1113(a). Thus, the one-year limitations period set forth in Section 2244(d)(1) commenced running the following day, i.e., on December 16, 2016, and Petitioner had one year or until December 16, 2017 to file his Section 2254 petition in this court. Petitioner, however, did not file his petition in this court until January 20, 2026. (Doc. 2.) This is over seven years after the one-year statute of limitations had already expired. Consequently, the court finds that his petition is untimely.

However, the court's analysis does not end there. The court must next determine whether Petitioner is entitled to any statutory or equitable tolling, or relief under the actual innocence exception. For the reasons discussed below, the court finds that Petitioner is entitled to some statutory tolling, but not any relief under equitable tolling or the actual innocence exception. However, despite the tolling, his petition is still untimely.

**A. Statutory Tolling**

With respect to statutory tolling, the court observes that, under Section 2244(d)(2), the one-year limitations period is tolled with respect to "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending[.]" *See* 28 U.S.C. § 2244(d)(2). Here, the record reflects that Petitioner filed a PCRA petition on January 6, 2017, tolling the one-year limitations period after twenty-one (21) days had elapsed—i.e., counting from December 16, 2016 (when the one-year limitations period initially commenced) to January 6, 2017 (when Petitioner filed his PCRA petition). The PCRA court denied his request for relief on July 15, 2019. On August 13, 2019, Petitioner filed notices of appeal and the Superior Court affirmed the dismissal of Petitioner's petition on September 29, 2020. The Supreme Court denied review on February 10, 2021.

Therefore, the tolling ended on February 10, 2021. Petitioner filed a second PCRA petition on March 29, 2021, tolling the one-year limitations period after an additional forty-seven (47) days. The PCRA court denied the second petition on January 31, 2022 and no appeals were taken.

Petitioner then filed a third petition on December 1, 2022. However, this petition does not toll the statue of limitations because the Superior Court of Pennsylvania found this petition to be untimely. *Commonwealth v. Richard*, 335

A.3d 312 (Pa. Super. Ct.), *appeal denied,* 343 A.3d 728 (Pa. 2025). "[A]n untimely petition for collateral relief under the state statute of limitations will not toll the time provision of the AEDPA." *Pace v. DiGuglielmo*, 544 U.S. 408 (2005). As such, it did not toll the statute of limitations, and March 2, 2022 (thirty-days after the January 31, 2022 PCRA denial) is the end of the tolling period. *See* PA. R.A.P. 903(a) (providing that a petition for allowance of appeal to the Pennsylvania Superior Court shall be filed within thirty (30) days after the entry of the trial court's dismissal of Petitioner's PCRA petition).

Consequently, because Petitioner's Section 2254 petition was not filed in this court until January of 2026, statutory tolling does not overcome the untimeliness of his petition. Therefore, the court turns to the question of whether the one-year limitations period set forth in Section 2244(d)(1) is subject to equitable tolling or whether Petitioner is entitled to relief under the actual innocence exception.

**B. Equitable Tolling**

"Equitable tolling is available 'only when the principle of equity would make the rigid application of a limitation period unfair.'" *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (quoting *Merritt v. Blaine*, 326 F.3d 157, 168 (3d Cir. 2003)). For that reason, "[a] petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some 'extraordinary

circumstance stood in his way.'" *See id.* (quoting *Pace*, 544 U.S. at 418). Equitable tolling may be appropriate if: (1) the petitioner has been "actively misled[;]" (2) the petitioner "has in some extraordinary way been prevented from asserting his rights;" or (3) the petitioner "has timely asserted his rights mistakenly in the wrong forum." *See id.* (quoting *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)).

Petitioner makes no allegations in furtherance of equitable tolling. Petitioner argues that two attorneys refused to raise his claims of venue and jurisdiction restrictions, which cost him the ability to raise them in his PCRA appeal. (Doc. 9, pp. 9–10.) He also states that the PCRA court refused to consider the matter in the July 15, 2019 decision. (Doc. 9, p. 10.) Petitioner was granted a second opportunity through the PCRA court in his section PCRA petition. Therefore, this claim of ineffective assistance of counsel does not rise to the level of prevention required to justify equitable tolling because he got a second opportunity to raise the issues in his second PCRA petition.

**3. Actual Innocence**

The court begins with the basic legal tenet that the actual innocence exception "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *See McQuiggin v. Perkins*, 569 U.S. 383, 394–95 (2013)

(quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Thus, relief under this exception is exceedingly rare, *see id.* at 386, and the standard for establishing actual innocence is an exacting one, *see id.* at 401. The standard demands "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *See Schlup*, 513 U.S. at 324. Accordingly, a habeas corpus petitioner has not met this standard "'unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *See McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).

"Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324; *Sistrunk v. Rozum*, 674 F.3d 181, 192 (3d Cir. 2012) (explaining that "*Schlup* sets a supremely high bar"). Thus, "[p]roving actual innocence based on new evidence requires the petitioner to demonstrate (1) new evidence (2) that is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner." *See id.* at 191 (citations omitted). All three of these factors are necessary for a habeas corpus petitioner to be entitled to relief under the actual innocence exception. *See id.* And if ultimately proven, this exception "serves as a

gateway through which a petitioner may pass" even though the statute of limitations has expired. *See McQuiggin*, 569 U.S. at 386.

Accordingly, in order for Petitioner to demonstrate that he is entitled to pass through this gateway exception based upon his actual innocence, he is required to establish as a factual matter that, in light of new reliable evidence, no juror acting reasonably would have found him guilty of the crimes for which he was convicted. The court, having carefully reviewed this matter, ultimately finds that Petitioner has not made this threshold showing. In fact, from what the court can discern, Petitioner has not asserted actual innocence, much less shown actual innocence. (Doc. 9.) Thus, for all of these reasons, the court concludes that Petitioner has not met his burden of proof that he is entitled to relief under the actual innocence exception. *See House v. Bell*, 547 U.S. 518, 538 (2006) (stating that "it bears repeating that the *Schlup* standard is demanding and permits review only in the extraordinary case" (citations omitted)).

Therefore, the petition is untimely, not subject to sufficient tolling, and will be dismissed.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant

has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will be issued.

## CONCLUSION

For the above stated reasons, the petition filed pursuant to Section 2254 will be dismissed as untimely and the case will be closed.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: October 14, 2026